**In re Stephen v. GREAR, Debtor.**

**Bankruptcy No. 93–40533.**

United States Bankruptcy Court,
S.D. Illinois.

Feb. 10, 1994.

Bob G. Kearney, Benton, IL, Trustee.

Michelle Vieira, Marion, IL, for debtor.

*OPINION*

KENNETH J. MEYERS, Bankruptcy Judge.

Prior to the Chapter 13 bankruptcy filing of debtor, Steven Grear, the Internal Revenue Service ("IRS") levied against bank accounts and a life insurance policy owned by the debtor and became a secured creditor as to these assets. In his Chapter 13 plan, the debtor proposed to turn over the cash proceeds of the bank accounts and the insurance policy to the IRS without payment of the trustee fee on these amounts. The trustee has objected to confirmation of the debtor's plan, contending that it improperly provides for direct payment to creditors without payment of the trustee fee. The debtor responds that no trustee fee should be assessed upon his surrender of collateral to the IRS, even though that collateral consists of cash proceeds.

The debtor is a self-employed pharmacist who operates Zeigler Drugs in Zeigler, Illinois. Upon his bankruptcy filing in July 1993, he had an outstanding tax liability to the IRS of $173,424.21 for unpaid income taxes. By its prepetition levy, the IRS obtained a lien on two bank accounts with balances totaling $39,164.17 and a life insurance policy with a cash value of $39,353.00. In addition, the IRS obtained a lien on other property owned by the debtor in the amount of $21,723.21.

In his plan the debtor provided for payment of the IRS's secured claim in the amount of $100,240.38 and for pro rata payment of its unsecured claim of $73,183.83. The concluding paragraph of the plan, designated as an "optional provision pursuant to 11 U.S.C. § 1322(b)," stated:

> Upon confirmation ... the debtor shall voluntarily turn over the sum of $78,517.17 to the IRS[,] which amount represents the proceeds from IRS levies on bank accounts and life insurance policies. In addition, the debtor shall execute a deed to the IRS for [certain real estate subject to the IRS lien] and take credit for $3,000.00 against the secured claim as the value of the property. The balance of the secured claim will be $21,723.21 which will be paid pursuant to [the plan].[1] *No trustee fee will be due on the above transfers of money and property since said amounts will be turned over pursuant to the IRS levies.*

(Emphasis added.)

■ The trustee argues that a trustee fee should be imposed on the cash payments to the IRS from the debtor's bank accounts and insurance policy. He asserts that these payments are payments on a secured claim that must be made through the trustee and that they would thus be subject to the fee assessed on Chapter 13 plan payments under 28 U.S.C. § 586(e).

■ Section 586(e) provides for imposition of a ten percent trustee fee on payments under Chapter 13 plans. *See* 28 U.S.C. §§ 586(e)(1)(B)(i) and (e)(2).[2] Because Chapter 13 plans are typically funded from future earnings of the debtor, the debtor generally makes monthly or periodic payments to the trustee, who pays creditors' claims and collects a fee on these payments. Such payments are made pursuant to 11 U.S.C.

---

1. In reaching this balance, the debtor apparently failed to subtract the $3,000 amount attributable to the real estate from the total secured claim amount of $100,240.38. The Court notes that the property was to be conveyed subject to a real estate tax lien in the amount of $321.28, which would reduce the amount to be credited against the IRS's secured claim.

2. Section 586(e) provides in pertinent part:
    (e)(1) The Attorney General, in consultation with a United States trustee that has appointed an individual ... to serve as standing trustee in cases under ... [chapter 13], shall fix—
    . . . . .
    (B) a percentage fee not to exceed—

    (i) in the case of a debtor who is not a family farmer, ten percent[.]

    . . . . .
    (2) Such individual shall collect such percentage fee from all payments received by such individual under plans in cases under ... [chapter 13] for which such individual serves as standing trustee.
    28 U.S.C. § 586(e)(1)(B)(i) and (e)(2).

§ 1322(a)(1), which calls for submission of the debtor's earnings to the trustee to the extent necessary for execution of the plan. Monthly or periodic payments under Chapter 13 plans, then, are made through the trustee and are subject to the fee of § 586(e). *See In re Harris,* 107 B.R. 204, 209 (Bankr. D.Neb.1989); *but cf. Matter of Aberegg,* 961 F.2d 1307, 1309–10 (7th Cir.1992) (current residential mortgage payments may be made directly by the debtor rather than through the trustee, who collects no fee on such payments).

While periodic payments are the usual method for paying claims under a Chapter 13 plan, the Code also allows the debtor to liquidate assets or return collateral in order to pay part or all of a claim. Under § 1322(b)(8), the debtor may propose a plan that provides for payment from "property of the estate or property of the debtor." 11 U.S.C. § 1322(b)(8).[3] Further, § 1325(a)(5)(C) provides for confirmation of a plan in which the debtor surrenders property securing a claim to the holder of such claim. 11 U.S.C. § 1325(a)(5)(C).[4]

■ Pursuant to § 1322(b)(8), the debtor may liquidate property of the estate or property of the debtor, such as exempt property, and make one lump sum payment to a claimholder in complete or partial satisfaction of the claim. *See* 5 *Collier on Bankruptcy,* ¶ 1322.12, at 1322–33 to 1322–34 (15th ed. 1993). Decisions involving the payment of claims under § 1322(b)(8) are unclear concerning whether such lump sum payment must be made through the trustee so as to be subject to the fee of § 586(e). Some courts have referred to payment of the liquidated sum through the trustee with no discussion of the fee issue. *See In re Tomasso,* 98 B.R. 513 (Bankr.S.D.Cal.1989) (proceeds of personal injury settlement paid in lump sum to Chapter 13 trustee); *In re Hogue,* 78 B.R. 867 (Bankr.S.D.Ohio 1987) (proposed lump sum or balloon payment from sale of house to be paid to Chapter 13 trustee). Other courts have allowed debtors to make one-time payments directly to affected creditors without payment of the trustee fee. *See In re Gregory,* 143 B.R. 424, 428 (Bankr.E.D.Tex.1992) (debtor allowed to make single payment from one source—sale of homestead—directly to the IRS without payment of the trustee fee, as requiring such payment to be funneled through the trustee would be a windfall); *see also In re Harris.*[5]

■ When property securing a claim is surrendered to the claimholder pursuant to § 1325(a)(5)(C), however, there is no trustee fee assessed because the property is transferred directly to the secured creditor without involvement by the trustee. The Court is aware of no case in which such surrender has been required to be made through the trustee. Indeed, since the surrendered property is usually non-cash collateral that is transferred in kind without being reduced to cash, the issue of payment of the trustee's percentage fee does not arise. *See In re Jock,* 95 B.R. 75, 77 (Bankr.M.D.Tenn.1989) (debtor may surrender car to secured creditor in satisfaction of claim).

In the present case, the trustee makes no assertion that the debtor's proposed transfer of real estate to the IRS should be subject to assessment of a fee. Because the IRS has a lien on the real estate pursuant to its levy, the real estate would be surrendered to the IRS as secured creditor under § 1325(a)(5)(C). In the same way, the cash

---

**3.** Section 1322(b)(8) provides that a Chapter 13 plan may

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor.

**4.** Section 1325(a)(5)(C) provides that the court may confirm a plan if

(5) with respect to each allowed secured claim provided for by the plan—

.  .  .  .  .

(C) the debtor surrenders the property securing such claim to such holder[.]

**5.** The *Harris* court ruled that a lump sum payment to a secured creditor shortly after confirmation could be made directly by the debtor, as "there seem[ed] to be no reason to require the payment to be made through the trustee." *Harris,* 107 B.R. at 209. In dicta, the court stated that "[a] similar direct payment under a plan may be appropriate in cases where property of the estate is sold and the proceeds remitted to secured creditors." *Id.*

proceeds of the debtor's bank accounts and life insurance policy, which are subject to the IRS's lien, constitute collateral of the IRS that may be surrendered to it pursuant to § 1325(a)(5)(C). Despite their character as cash, the bank accounts and life insurance policy each represent an identifiable *res* that may be seized by creditors. *Cf. United States v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1017, 117 L.Ed.2d 181 (1992) (federal jurisdiction did not exist where respondent sought to recover sum of money rather than "particular dollars" in a segregated or identifiable fund) (citing *Pennsylvania Turnpike Comm'n v. McGinnes*, 268 F.2d 65, 66–67 (3d Cir.), *cert. denied*, 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959). Thus, the debtor's proposed "payment" of these funds to the IRS is actually a transfer or turnover of collateral rather than a payment from the debtor's income or other property.

Because the transfer of cash from the debtor's bank accounts and life insurance policy constitutes a turnover of collateral pursuant to § 1325(a)(5)(C), the funds may be paid over directly without involvement by the trustee or payment of the trustee fee of § 586(e). Accordingly, the Court overrules the trustee's objection to confirmation of the debtor's plan to the extent it proposes to pay such amounts directly to the IRS.

■ The trustee has additionally objected to the debtor's plan on the ground that it unfairly discriminates between classes of unsecured creditors. In his plan, the debtor set forth two classes of unsecured creditors: Class A consisting of trade creditors of Zeigler Drugs with claims for amounts owed in the month preceding bankruptcy and Class B consisting primarily of the IRS to the extent its claim is unsecured. The plan provided that Class A creditors would be paid in full outside the plan "in the ordinary course of the debtor's business" and that Class B cred-

itors would share pro rata the sum of $4,062.00, "represent[ing] non-exempt assets available to unsecureds in a liquidation analysis."

While the debtor argues that this separate classification is justified in order to pay trade creditors in full and ensure the continued operation of his business, the Court finds this argument and the trustee's objection to be moot. The debtor's plan provides for payment to unsecured creditors "whose claims are duly filed and allowed." None of the trade creditors listed in Class A has filed a proof of claim in the debtor's bankruptcy proceeding and, accordingly, none are entitled to share in the funds available to pay unsecured creditors. Since there are no Class A creditors as defined by the plan, the debtor's separate classification of these creditors is of no effect, and the trustee's objection is overruled as moot.

■ The Court, however, declines to order confirmation of the debtor's plan pending further review by the trustee. The Court notes that the debtor proposed to pay Class A creditors' prepetition claims "outside the plan in the ordinary course of the debtor's business." Since, under the disposable income requirement of § 1325(b)(1)(B),[6] all the debtor's disposable income must be applied to make payments under the plan, the debtor may not pay these creditors' claims during the period of his plan without violating the disposable income requirement of § 1325(b)(1)(B). The trustee, therefore, is directed to review the debtor's budget to determine whether to renew his previously filed objection based on disposable income. The trustee should also review the plan to determine whether it is otherwise confirmable.

For the reasons stated, the Court overrules the trustee's objections to confirmation with regard to the proposed payment from

---

**6.** Section 1325(b)(1)(B) provides

(b)(1) If the trustee ... objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in

the three-year period [of the plan] will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1)(B). In this case, the trustee filed a disposable income objection that was ostensibly resolved prior to hearing.

the debtor's bank accounts and life insurance policy to the IRS and the separate classification of unsecured creditors' claims. The Court declines to order confirmation of the debtor's plan pending further review by the trustee. The trustee shall file any additional objections to confirmation of the debtor's plan within 30 days.