**In re Robert D. SCHNEEKLOTH, and Gwendolyn K. Schneekloth, Debtors.**

**Bankruptcy No. 95–10286–12.**

United States Bankruptcy Court, D. Montana.

Oct. 2, 1995.

Morris J. Braden, Billings, MT, for debtors.

---

## ORDER

JOHN L. PETERSON, Chief Judge.

Robert D. and Gwendolyn K. Schneekloth ("Debtors") filed this voluntary Chapter 12 bankruptcy petition February 16, 1995. Schedules and Statement of Affairs were filed April 17, 1995. On June 26, 1995, Debtors filed a First Amended Chapter 12 Plan of Reorganization ("the Plan"), to which the Chapter 12 Trustee ("Trustee") objected on July 3, 1995. The Plan provides for, *inter alia,* a "surrender of collateral" of $50,000.00 in funds on deposit with the Clerk of Court for Montana's Fifteenth Judicial District to Citizens State Bank of Scobey ("the Bank"). The Trustee alleges that the Plan does not comply with LBR 20(a) and LBF 14 and that the Plan improperly provides for a direct payment to an impaired secured creditor rather than payment through the Trustee. Debtors oppose the objection, averring the Plan substantially complies with Court rules, and does not provide for payment of $50,-000.00 to the Bank, as the transfer is a mere turnover of the Bank's collateral. The Bank filed a memorandum with the Court supporting the Plan, arguing that the transfer to the Bank is not a payment but a "surrender of collateral" and that only the future earnings of Debtors need be paid through the Chapter 12 Trustee.

After due notice, hearing was held on the matter at Billings on July 11, 1995. The parties were represented by counsel, arguments were heard and exhibits admitted into evidence. Ten days were given in which to file supplementary briefs and the Court took the matter under advisement. The parties timely submitted briefs, which the Court has reviewed. The issues are now ripe for decision. The Court finds the Plan provides for a surrender of collateral upon which the Chapter 12 Trustee may not impose a fee. Therefore, Trustee's Objection to the Plan is overruled.

### I.

The Bank is a secured creditor of the Debtors pursuant to a Judgment and Decree of Foreclosure entered by the Montana Fifteenth Judicial District Court, Daniels County, Montana, on November 28, 1994. In conjunction with the entry of the Judgment and Decree of Foreclosure, the Daniels County district court entered its order in favor of the Bank for a Writ of Assistance on February 9, 1995. The decree entitled the Bank to the proceeds of certain collateral securing money

it loaned to the Debtors, who were found to be in default. As noted above, Debtors filed this voluntary Chapter 12 bankruptcy petition February 16, 1995.

During the pendency of the foreclosure litigation leading to the Daniels County decree, the Daniels County district court, on the Bank's motion, ordered Debtors to deposit with the clerk of court proceeds from the sale of the Bank's collateral in the approximate amount of $55,000.00. By this order, the clerk took possession and custody of the collateral proceeds pending the outcome of the foreclosure proceeding prior to Debtors bankruptcy filing. The Court finds no evidence in the record of any collusion on the part of the Bank and the Debtors in this case. In addition, Debtors, at the time of their bankruptcy filing, had in their possession checks related to the sale of the Bank's collateral in the approximate amount of $15,876.00. The Bank also holds a secured interest, pursuant to the underlying security agreements, in machinery and equipment, livestock, grain, and other personal property of the Debtors.

Debtors' First Amended Chapter 12 Plan of Reorganization provides that the Bank will receive $50,000.00 from the funds currently held by the Daniels County Clerk of Court to be released upon confirmation. The Plan characterizes this arrangement as a "surrender of collateral." Debtors liken the transfer of cash to a turnover of, say, a farm implement to a secured creditor, as does the Bank, and argue that the arrangement does not give rise to the statutory trustee fee. The Trustee, on the other hand, argues that the transfer of funds to the Bank is a direct payment under Debtors' Plan subject to the Trustee's fee. Under either interpretation, the Plan contemplates the Bank's receipt of $50,000.00.

## II.

The Ninth Circuit Court of Appeals has held:

"Chapter 12 of the bankruptcy code does not authorize a debtor to make payments directly to creditors with claims modified by a plan of reorganization in order to avoid paying the bankruptcy trustee the statutory fee under 28 U.S.C. § 586. Although the BAP hinted that Chapter 12 might permit a debtor to make direct payments to impaired creditors without trustee compensation in certain limited circumstances, see In re Fulkrod, 126 B.R. [584 (9th Cir. BAP 1991)] at 588, that statement is neither necessary to its decision nor supported by statute."

In re Fulkrod, 973 F.2d 801, 803 (9th Cir. 1992) (emphasis added); see contra, In re Erickson Partnership, 77 B.R. 738 (Bankr. D.S.D.1987). Clearly then, the Court may not allow confirmation of a Plan that allows for Debtors' "direct payment" to the Bank without paying the Trustee's statutory fee.

On the other hand, 11 U.S.C. § 1225(a)(5)(C) requires this Court to confirm an otherwise acceptable Plan in which, "with respect to [an] allowed secured claim provided for by the Plan, the Debtor surrenders the property securing such claim to such holder." Thus, the Court shall confirm an otherwise acceptable Plan that provides for surrender of the collateral from the Debtors to the Bank. The determinative question then becomes, whether the transfer of funds from the Debtors to the Bank is a direct payment for purposes of determining 28 U.S.C. § 586 Trustee's fees, or a § 1225(a)(5)(C) surrender of property securing an allowed claim.

Neither the parties' briefs, nor the Court's own research reveals any case law from Ninth Circuit courts controlling this point. Fulkrod may make it clear that a Chapter 12 Plan cannot provide for direct payments by a debtor to an impaired creditor, however, the facts stated in the court's ruling on that matter do not unambiguously reveal the underlying nature of the "payments" proposed in the Fulkrod Plan. Fulkrod, 973 F.2d 801. The language of the BAP's Fulkrod opinion does suggest that the debtor proposed using monies from future income to pay the impaired creditors directly, 126 B.R. at 585, however, such facts, if in fact extant, would make Fulkrod distinguishable from the case at bar. Further, the two Fulkrod opinions insinuate nothing whatsoever by which to infer that the monies in question were derived in whole or in part from the sale of

creditors' collateral. *Id.*, 973 F.2d 801. Thus, the *Fulkrod* holding does not resolve the factual matter now before the Court.

Notwithstanding a dearth of Ninth Circuit authority, courts elsewhere have confirmed analogous Chapter 12 and Chapter 13 [1] plans providing for the surrender by debtors of the cash proceeds of collateral to holders of perfected claims on the collateral. *See, In re Wells,* Bankruptcy No. BK94–40339, 1994 WL 822534 (Bankr.D.Neb. June 9, 1994); *In re Grear,* 163 B.R. 524 (Bkrtcy.S.D.Ill.1994). For instance, in *In re Grear* the court reasoned that the cash nature of the proceeds did not control whether they could be surrendered to an impaired creditor without assessment of a trustee's fee. Rather the court focused on the source of the cash to be turned over to determine whether it should be characterized as a payment giving rise to a trustee's fee or as a surrender of collateral:

> [The collateral] represent[s] an identifiable res that may be seized by creditors. Cf. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 38, 112 S.Ct. 1011, 1017, 117 L.Ed.2d 181 (1992) (federal jurisdiction did not exist where respondent sought to recover sum of money rather than "particular dollars" in a segregated or identifiable fund) (citing *Pennsylvania Turnpike Comm'n v. McGinnes,* 268 F.2d 65, 66–67 (3d Cir.), *cert. denied,* 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959). Thus, the debtor's proposed "payment" of [the proceeds from the collateral] to the IRS is actually a transfer or turnover of collateral rather than a payment from the debtor's income or other property.

*Id.* at 527.

The court also emphasized that 11 U.S.C. § 1322(a)(1) [2] only requires that an otherwise confirmable plan shall provide that a debtor's *future* earnings be submitted to the supervision and control of the trustee. *Id.* at 525. Thus, cash proceeds directly traceable to the sale of secured collateral, as opposed to future earnings, need not come under the

trustee's custody if surrendered to the secured creditor. This, the court noted, is done routinely in many Chapter 13 Plans where collateral is surrendered and never reduced to cash under 11 U.S.C. § 1325(a)(5)(C) (allowing for surrender of property securing the claims of a secured creditor). *Id.* at 526. Chapter 12 analysis should proceed along similar lines.

To begin with, Chapter 12 requires that confirmable plans must submit "future earnings" to the trustee's supervision. 11 U.S.C. § 1222(a)(1). Moreover, in Chapter 12 cases, future earnings include only property of the estate acquired post-petition. 11 U.S.C. § 1207. Further, confirmable plans may also provide for the satisfaction of claims by a debtor's surrender of attached property—either in whole or in part—to secured lenders. 11 U.S.C. § 1225(a)(5)(C); *In re Indreland,* 77 B.R. 268, 272–273 (Bankr.D.Mont. 1987) (holding that a transfer of property, either in part or in whole to satisfy a secured claim is permitted in Chapter 12, under § 1222(b)(7) or (8) and § 1225(a)(5)(B) or (C)); *see also, In re Fobian,* 951 F.2d 1149 (9th Cir.1991) (referencing *Indreland* with approval).

Congress established Chapter 12 of the Bankruptcy Code "to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." "Joint Explanatory Statement of the Committee of the Conference," Conference Report, HR Rep. No. 958, 99th Cong., 2d Sess. 48 (Oct. 2, 1986). This policy calls for courts to provide flexibility for debtors when interpreting the Code, and absent direct statutory authority to the contrary, allow for innovative Chapter 12 provisions designed to give debtors a "fighting chance" to reorganize a family farm. Thus, to promote Congressional policy, courts should confirm any innovative Chapter 12 plan conforming with the express dictates statute. Consequently, the Court agrees with the approach taken in *In re Grear,* and finds confirmation should be

---

1. The Court has earlier held that Chapter 13 statutory construction and practice "provide a valuable tool for interpretation of Chapter 12." *In re Janssen Charolais Ranch, Inc.,* 73 B.R. 125, 126 (Bankr.D.Mont.1987).

2. The Chapter 13 analog to 11 U.S.C. § 1222(a)(1) at issue here.

granted for Chapter 12 plans with comparable provisions.

### III.

Turning now to the instant case, the Court finds that the state court decree issued November 28, 1994, established the Bank's right to the proceeds in the custody of the state Clerk of Court prior to the filing of the instant bankruptcy petition. By all accounts those proceeds arose from the prepetition sale of collateral securing loans the Bank made to Debtors. As such, the proceeds are not § 1222(a)(1) "future earnings" of the Debtors, and are not property of the estate for purposes of § 1207. Furthermore, as other than future earnings, the proceeds need not be submitted to the supervision of the Trustee. 11 U.S.C. § 1222(a)(1). Since the proceeds in fact arise from the sale of, and are directly traceable to, an identifiable res securing the Bank's interest, an otherwise acceptable Plan allowing for the surrender by Debtors of such collateral to the Bank comports with 11 U.S.C. 1225(a)(5)(C), and the Court should confirm it. *See, Grear,* 163 B.R. at 527; *Indreland,* 77 B.R. at 272–273.

### IV.

The Trustee also alleges that the Debtors' Plan fails to comply with LBR 20(a) and LBF 14. Upon review of Debtors' Plan, the Court finds it to be in substantial compliance with Local Bankruptcy Rules. The Court also finds that Debtor's Final Amended Chapter 12 Plan has reasonable income and expense projections and it complies with all of the provisions of 11 U.S.C. § 1225. Accordingly,

IT IS ORDERED:

1. The Debtors' First Amended Chapter 12 Plan of Reorganization, filed June 23, 1995, is hereby confirmed;

2. The Debtor shall pay over to the Trustee all amounts set forth in the Plan, at the times set forth in the Plan;

3. The value of the collateral securing debts due holders of secured claims is fixed at the value stated in the Plan;

4. Upon completion of the Plan, according to its final terms, all judgments and U.S.C. filings shall be satisfied.