**In re FLATBUSH ASSOCIATES, Debtor.**

**Bankruptcy No. 92 B 44440 (TLB).**

United States Bankruptcy Court,
S.D. New York.

July 16, 1996.

■■■■■■■■■■■

Kensington & Ressler, P.C. by Michael J. Venditto, New York City, for Debtor.

Wolf Haldenstein Adler Freeman & Herz by Eric B. Levine, New York City, for Kings Village Owners Corp.

The Office of the United States Trustee by Brian S. Masumoto, New York City.

## DECISION ON UNITED STATES TRUSTEE'S FEES

TINA L. BROZMAN, Chief Judge.

The Office of the United States Trustee objected to confirmation of Flatbush Associates' ("Flatbush") plan of reorganization on the theory that the debtor failed to provide for full payment of United States Trustee's fees required by 11 U.S.C. § 1129(a)(12) and 28 U.S.C. § 1930. When a party in interest requested time to further brief the issue, I ordered the debtor to escrow the disputed amount and confirmed the plan, reserving decision on the proper amount of the fees. Notwithstanding this request, no further briefing has been submitted.

## I.

Prior to its bankruptcy, the debtor, a limited partnership, acquired a complex of residential apartment buildings located in Brooklyn, New York. Flatbush converted the complex to a cooperative corporation through a "cooperative plan" in which it offered to sell shares of Kings Village Owners Corporation ("Kings" or "the Co-op") to purchasers who would become "tenant/shareholders" with rights to individual units within the complex governed by "proprietary leases" with the Co-op.

Flatbush and Kings entered into a contract whereby the Co-op purchased the complex from Flatbush in exchange for title to all the unsold shares of the Co-op. Under the cooperative plan and proprietary lease, the holder of the shares had to make monthly maintenance payments to Kings for that holder's share of the operation and maintenance of the complex. By 1987, the debtor had sold some 52% of the shares to tenant/shareholders. The debtor retained the remaining shares and rented the respective unsold apartments to non-purchasing tenants ("subtenants"). As holder of the unsold shares, the debtor was responsible to Kings for making the monthly maintenance payments on each unsold unit.

By virtue of the structure of the cooperative plan, the applicable New York General Business Law § 352–eeee, and the fact that most of the subtenants had rented their apartments before the complex converted to a cooperative, many of the subtenants were paying a monthly rental which was less than the required per unit monthly maintenance payable to Kings under the plan. Eventually, with sales of the unsold units stagnant, the debtor fell behind in its maintenance payments to Kings. In August 1992, another creditor filed an involuntary chapter 11 petition against Flatbush. Flatbush consented to an order for relief in September 1992, and Kings filed a claim approximating $3 million against the estate for unpaid maintenance and other charges.

Given the deficit in cash, early in the proceedings Flatbush agreed to allow the subtenants to pay their rent directly to Kings. I "so-ordered" this stipulation on September 21, 1992. Now, because the subtenants paid their rent directly to the Co-op, Kings contends that there was no "disbursement" upon which the United States Trustee may collect a fee. Kings says that neither it nor the debtor were "disbursing" any funds when Kings collected rent from the subtenants. The United States Trustee views this Flatbush/Kings argument as nothing more than legal legerdemain in as much as the subtenants' rents were property of the estate which were being used to meet an expense of the estate. I agree with the United States Trustee.

## II.

■■■ Section 1129 of the Bankruptcy Code provides in pertinent part:

The court shall confirm a plan only if all of the following requirements are met: ... (12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

11 U.S.C. § 1129(a)(12).

Section 1930(a)(6), which was enacted in 1986, prescribes the fees payable to the United States Trustee:

In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until [a plan is confirmed or] the case is converted or dismissed, whichever comes first. The fee shall be $250 for each quarter in which *disbursements* total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $3,000,000; $5,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.[1] (Emphasis added).

(Emphasis added). There is no definition in the statute of the word "disbursements" and no legislative history elucidating the meaning of the word. *Black's Law Dictionary* defines "disbursement" as "to pay out, commonly from a fund. To make payment in settlement of a debt or account payable." (6th ed. 1990).

Interpreting the word according to its ordinary meaning, the court in *In re Hays Builders, Inc.* held that a disbursement under section 1930 is any payment whether direct or through a third party. *Office of the United States Trustee v. Hays Builders, Inc. (In re Hays Builders, Inc.)*, 144 B.R. 778 (W.D.Tenn.1992); *see also In re Ozark Beverage Company, Inc.*, 105 B.R. 510 (Bankr. E.D.Mo.1989) ("disbursements" encompasses all expenses of a debtor in possession). Here, the monthly rents were indisputably the debtor's property; the Co-op contends only that their *collection* could not constitute "disbursements" within the meaning of the word.[2] Kings' word play, however, is unavailing. The rents were property of the estate used to pay an expense of the estate; therefore, the payment by the debtor's subtenants directly to the Co-op were payments "from a fund" within the plain meaning of the word "disbursements." *See* BLACK'S LAW DICTIONARY (6th ed. 1990).

Kings purports to distinguish *Hays* on the fact that the third party payments in *Hays* were made by an agent of the debtor, whereas here, Kings has an independent right to the money by virtue of the "so-ordered" rent stipulation and/or by virtue of § 352–e(2–d)(c) of New York's General Business law.[3]

---

**1.** The bracketed language in this section was deleted by a 1996 amendment. Pub.L. No. 104–91, Title I, § 101(a) (Jan. 6, 1996), as amended 104–99, Title II, § 211, 110 Stat. 37 (Jan. 26, 1996). The amendment allows the Trustee to collect its normal fees in a chapter 11 case after confirmation of a plan of reorganization and until conversion or dismissal. The effective date of the amendment is January 26, 1996. The legislative history of the statute indicates that it will apply as of the effective date to "all pending Chapter 11 cases with confirmed reorganization plans." H.R.CONF.REP. No. 378 § 111(a), 104th Cong., 1st Sess. __ (1995); 141 CONG.REC. H13894, 13899; *see also Central Florida Electric, Inc.*, 197 B.R. 380 (Bankr.M.D.Fla.1996).

**2.** The Co-op acknowledges that it was applying the rents to the debtor's post-petition maintenance obligation while the debtor decided whether to assume or reject the proprietary leases. Response of Kings, ¶ 2 at 2; ¶ 8 at 4.

**3.** The subsection provides in full:

If maintenance payments, common charges or other fees due from the non-occupying owner have not been paid in full, the cooperative corporation board of directors or condominium board of managers shall provide written notice within forty-five days after the earliest due date to the non-purchasing tenant and the non-occupying owner providing that, commencing immediately and until such time as payments are made current, all rental payments due are to be made payable to the cooperative corporation or condominium association at the address listed on the notice. Where a majority of the board of directors or managers has been elected by and from among

This is a classic distinction without a difference, for neither the rent stipulation nor § 352–e(2–d)(c) purports to divest the debtor of ownership of the shares; there is no doubt that the attendant maintenance charges attributable to share ownership were being charged to the estate as administrative expenses. *Cf. In re Betwell Oil & Gas Co.*, 191 B.R. 954, 955–56 (Bankr.S.D.Fla.1996) (prior order determined that the funds were not "property of the estate" and therefore United States Trustee was not entitled to base fees on distribution of those funds).

 Even if the rent stipulation and/or § 352–e(2–d)(c) of New York's General Business law granted Kings a lien, the debtor would still be liable for the United States Trustee's fees on the rents. All property, including property that is subject to a secured claim, becomes part of the bankruptcy estate. *See Dewhirst v. Citibank (In re Contractors Equipment Supply Co.)*, 861 F.2d 241, 244 (9th Cir.1988) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–209, 103 S.Ct. 2309, 2312–16, 76 L.Ed.2d 515 (1983)). In a factual situation analogous to that present here, the Ninth Circuit held that the United States Trustee's fees are properly assessed upon proceeds of the sale of the secured creditor's collateral even though those proceeds are then distributed to the secured creditor. *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1533–34 (9th Cir. 1994), *modified in part*, 46 F.3d 969 (9th Cir.1995) (no modification to analysis of "disbursements"). The court reasoned that because the collateral was property of the estate, section 1930 applied. *Id.* at 1535; *see also In re Meyer*, 187 B.R. 650 (Bankr. W.D.Mo.1995). Accordingly, because the rents were property of the debtor's estate and were being used to offset an expense of the estate, the payment of those rents directly from the debtor's subtenants to the Co-op constitutes disbursements within the meaning of section 1930. *See In re Hays Builders, Inc.*, 144 B.R. 778; *Victoria Farms, Inc.*, 38 F.3d 1525.

The United States Trustee is directed to SETTLE an ORDER consistent with this decision.

the shareholders or unit owners who are in occupancy, the board may elect not to require that rental payments be made payable to the cooperative corporation or condominium association. At such time as payments from the non-occupying owner are once again current, notice of such fact shall be given within three business days to the nonpurchasing tenant and non-occupying owner. Thereafter all rental payments shall be made payable to the non-occupying owner. A non-occupying owner who disputes the corporation's or association's right to receive rental payments pursuant to this section shall be entitled to present facts supporting its position at the next scheduled meeting of the board of directors or board of managers, which must be held within thirty days.