**In re CENTRAL COPTERS, INC., Debtors.**

Bankruptcy No. 98–21059–11.

United States Bankruptcy Court, D. Montana, Butte Division.

Oct. 2, 1998.

Dan McKay, Senior Attorney–Advisor, Office of U.S. Trustee, Great Falls, MT, for Office of U.S. Trustee.

Steven M. Johnson, Church, Harris, Johnson & Williams, Great Falls, MT, for Debtor-in-Possession.

Malcolm H. Goodrich, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Billings, MT, for Kaman Corporation.

## ORDER

JOHN L. PETERSON, Chief Judge.

In this Chapter 11 bankruptcy the Debtor–in–Possession ("DIP") filed a motion to dismiss on October 2, 1998. The Office of U.S. Trustee filed an objection on October 6, 1998, on the grounds that it is entitled to quarterly U.S. Trustee fees pursuant to 28 U.S.C. § 1930(a)(6) assessable against the settlement between the DIP, Kaman Aerospace Corporation ("Kaman") and Textron Financial Corporation ("Textron"), which was approved by Order entered August 20, 1998. A hearing on this matter was set on October 14, 1998. On October 13, 1998, the parties filed a joint motion to submit the matter on stipulated facts and briefs, which was granted. The parties' briefs have each been filed and reviewed by the Court, and this matter is ready for decision. For the reasons set forth below the U.S. Trustee's objection is sustained, and the DIP's motion to dismiss is granted on the condition that all U.S. Trustee quarterly fees are paid, including fees assessed under § 1930(a)(6) on the $3,284,-117.29 settlement amount between the DIP, Kaman, and Textron.

## FACTS

The parties stipulate to the following facts:

1. The DIP filed the instant Chapter 11 petition on April 20, 1998.

2. On August 13, 1998, the DIP filed a motion for approval of a settlement agreement by and between DIP, Kaman and Textron.

3. Also on August 13, 1998, the DIP filed its motion for transfer of assets free and clear of liens pursuant to 11 U.S.C. § 363(f) seeking an Order of the Bankruptcy Court

authorizing transfer of the DIP's interest in a Model K–1200 helicopter (hereinafter the "K–MAX"), S/N A94–0021, FA No: N21MX, together with all attachments and accessories thereto to Kaman, free and clear of liens, encumbrances and interests of third parties, for the sum of $3,284,117.29.

4. Attached to DIP's motion for approval of settlement agreement by and between the DIP, Kaman and Textron was an executed copy of the three-party Settlement Agreement between those settling entities.

5. No creditor or party in interest objected to either motion. At the hearing held on August 20, 1998, only counsel for the DIP and for Kaman appeared.

6. After the hearing held on August 20, 1998, following prior notice to all the parties in interest and creditors, the Court entered an Order on August 20, 1998, granting the DIP's motion for transfer of assets free and clear of lines pursuant to 11 U.S.C. § 363(f) and its motion for approval of settlement agreement by and between DIP, Kaman, and Textron.

7. On August 26, 1998, the DIP filed a motion and stipulation for direct remittance of settlement proceeds.

8. DIP's counsel Steven M. Johnson ("Johnson") filed the aforementioned motion and stipulation for direct remittance of settlement proceeds with the Court after the office of the U.S. Trustee informed DIP's counsel of its intention to assess the transfer sum with U.S. Trustee fees.

9. On August 26, 1998, the Court entered its Order granting DIP's motion and stipulation for direct remittance of settlement proceeds.

10. On August 28, 1998, the U.S. Trustee's office filed the U.S. Trustee's motion for reconsideration of the Court's Order entered August 26, 1998, and also filed its objection of U.S. Trustee to motion and stipulation for direct remittance of settlement proceeds.

11. On September 15, 1998, this Court entered its order denying the U.S. Trustee's motion for reconsideration filed August 28, 1998, and denying the U.S. Trustee's objection to motion and stipulation for direct re-

mittance of settlement proceeds without prejudice, however, to the U.S. Trustee's position regarding entitlement to U.S. Trustee fees. After the DIP filed its motion to dismiss its Chapter 11 case on October 2, 1998, the U.S. Trustee filed its objection to dismissal of the Chapter 11 case on October 6, 1998, alleging that the settlement proceeds from the three-party settlement agreement between Kaman, Textron and the DIP constituted a disbursement by the DIP for purposes of calculating quarterly fees allegedly owed by the DIP to the U.S. Trustee under § 1930(a)(6).

12. There exists a legal dispute between the DIP and the Office of the U.S. Trustee regarding the liability of the settlement transaction between Kaman, the DIP and Textron for assessment of U.S. Trustee fees. The DIP contends that the three-party settlement agreement between the DIP, Textron and Kaman was the functional equivalent of a return of the collateral to Textron and that the DIP neither received possession nor control of any funds which could be assessable with U.S. Trustee fees. The Office of U.S. Trustee contends that the DIP sold the K–MAX to Kaman and that the transfer of the settlement proceeds constituted an assessable "disbursement" within the ambit of § 1930(a)(6).

## DISCUSSION

At issue is whether the transaction between the DIP, Kaman and Textron resulted in "disbursements" which are assessable under § 1930(a)(6) even though the proceeds were never in the DIP's possession and instead were paid directly from Kaman to Textron through an escrow agent. Section 1930(a)(6) provides for the amount of U.S. Trustee fees as follows:

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156(b) of this title, the following filing fees:

\*       \*       \*       \*       \*       \*

(6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the

United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be ... $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000. ...

See, In re Maruko, Inc., 219 B.R. 567, 568 (S.D.Cal.1998).

The DIP argues that the proceeds from the settlement should be excluded from the calculation of the U.S. Trustee fees because they are not disbursements. Instead, DIP contends, the settlement provided for an in-kind transfer or surrender of secured collateral in exchange for debt forgiveness and other consideration. The Ninth Circuit addressed the breadth of the term "disbursements" under § 1930(a)(6) in St. Angelo v. Victoria Farms ("St. Angelo"), 38 F.3d 1525, 1533–35 (9th Cir.1994), amended, 46 F.3d 969, 970 (9th Cir.1995). In St. Angelo the Ninth Circuit wrote:

Turning to the merits of the appeal, we find that the district court erred by excluding the sale proceeds of Victoria Farm's secured property in calculating St. Angelo's fees. As noted above, the district court held—without citing any legal authority—that the term "disbursements" excludes all payments to a secured creditor from the sale proceeds of the secured property.

The term "disbursements" is not defined anywhere in 28 U.S.C. § 1930(a)(6), its legislative history, or the case law. However, a plain language reading of the statute shows that Congress clearly intended "disbursements" to include all payments from the bankruptcy estate. As the Supreme Court noted in Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979), "[a] fundamental canon of statutory construction is that ... words will be interpreted as taking their ordinary, contemporary, common meaning." The definition of "disburse" is "to expend ... pay out." Webster's Third New International Dictionary 644 (1976).

The statute does not in any way distinguish between payments to secured creditors and payments to non-secured creditors. See 28 U.S.C. § 1930(a)(6). Nor is there any indication in the legislative history that Congress intended such a result. The statute merely states that the trustee is entitled to fees based on the total amount of "disbursements" from the estate. Id. Accordingly, the district court's interpretation is simply without merit.

38 F.3d at 1533–34; See also In re Maruko, Inc., 219 B.R. at 571 (citing St. Angelo ).

■ The DIP contends that the proceeds are not disbursements because the proceeds were simply turned over to Textron, the secured party. This construction was applied by the district court in St. Angelo, which wrote: "This construction excludes any payment made to a secured creditor of the proceeds of the sale of that security." 38 F.3d at 1533–34 n. 9. The Ninth Circuit reversed, holding that the district court erred by excluding the sale proceeds of the secured property from the § 1930(a)(6) calculation. Id., 38 F.3d at 1534–35. In light of the holding of St. Angelo, this Court is bound to hold that all disbursements, "whether direct or through a third party, [are] included in the calculation of fees due the trustee under § 1930(a)(6)." 38 F.3d at 1534 n. 11 (quoting In re Wernerstruck, Inc., 130 B.R. 86, 89 (D.S.D.1991)); In re Hays Builders, Inc. ("Hays Builders"), 144 B.R. 778, 780 (Bankr.W.D.Tenn.1992); In re Ozark Beverage Co., Inc., 105 B.R. 510, 511–12 (Bankr. E.D.Mo.1989). A recent case found that all post-confirmation payments made by reorganized debtors, "as well as all payments from the bankruptcy estate, constitute 'disbursements' for the purposes of" § 1930(a)(6). In re Postconfirmation Fees, 224 B.R. 793, 798 (E.D.Wash.1998).

The DIP contends that St. Angelo, Hays Builders, and other cases which hold that payments through a third party are subject to assessment of fees under § 1930(a)(6), are all distinguishable because those cases require agency or privity of contract between the debtor and the third party. However, as shown by the quotation from St. Angelo, supra, set forth above and the cases cited therein, there is no such agency or privity requirement. DIP's "agency" argument was

considered and rejected as "word play" in *In re Flatbush Associates* ("*Flatbush*"), 198 B.R. 75, 77–78 (Bankr.S.D.N.Y.1996). There, a third party with an independent right to rents, by virtue of a stipulation, collected rents which were property of the estate. The bankruptcy court rejected the third party's argument, that *Hays Builders* was distinguishable because the third party was not an agent, as "a classic distinction without a difference". 198 B.R. at 77–78. Citing *St. Angelo* and *Hays Builders*, the bankruptcy court held that because the rents were property of the estate and were being used to offset an expense of the estate, the payment of rents by third parties to a creditor secured by the rents constituted disbursements within the meaning of § 1930(a)(6). 198 B.R. at 78.

In the instant case, there is no dispute that the K–MAX helicopter, parts and accessories are property of the estate, or that the payment by Kaman to Textron is being used to offset those parties' claims against the DIP as in *Flatbush*. The K–MAX is listed at Schedule B, paragraph 25 under "aircraft and accessories". DIP list Kaman as a secured creditor at Schedule D, secured by the K–MAX. The Ninth Circuit expressly held that "*all* property that is subject to a secured claim becomes part of the bankruptcy estate. *In re Contractors Equipment Supply Co.*, 861 F.2d 241 (9th Cir.1988). In *In re Contractors Equipment Supply Co.* we stated that '[t]he property of the debtor's estate includes property in which a creditor has a security interest.' *Id.* at 244. Accordingly, we conclude that the farm was part of Victoria Farms' bankruptcy estate and its sale proceeds should not have been excluded in calculating St. Angelo's fees." *St. Angelo*, 38 F.3d at 1535 (emphasis in original).

Since sale proceeds were assessable in *St. Angelo*, they are likewise assessable on the $3,284,117.29 in proceeds under § 1930(a)(6) in the instant case. DIP goes to great pains in its brief to avoid describing the settlement transaction with Kaman and Textron as a sale. Instead, DIP characterizes it as a functional equivalent of a return of the collateral to Textron, or an in-kind transfer, with the settlement amount never in the DIP's possession. DIP contends this makes all the difference. It does not. The fact remains the K–MAX was property of the estate, and so its proceeds are likewise property of the estate. *St. Angelo*, 38 F.3d at 1535. DIP's rhetorical flourish is unavailing.

The DIP filed a motion to transfer the K–MAX free and clear of liens under authority of 11 U.S.C. § 363(f) on August 13, 1998. DIP explains that "Kaman insisted upon a transfer of the helicopter to it free and clear of liens in order to protect against any possible, unknown statutory liens or interests that did not appear of record." DIP Brief pp. 9–10. The parties having chosen to file a motion under § 363(f), they must live with its consequences. Section 363(f) provides: "The trustee may *sell* property . . . free and clear of any interest in such property of an entity other than the estate. . . ." (Emphasis added). DIP's motion filed August 13, 1998, requests authority for "transfer and sale" of the K–MAX and accessories. It further provides that the DIP will give Kaman a bill of sale. The DIP, Kaman and Textron having proceeded under § 363(f), which provides for a sale free and clear of liens, and the motion providing for the sale by the DIP of the K–MAX and accessories which are property of the estate, the Court rejects DIP's characterization of the transaction as simply a surrender of collateral. They requested a sale free and clear of liens under a statute which authorizes sale free and clear of liens, and the Court entered an Order on August 10, 1998, authorizing the DIP "to sell to Kaman" the K–MAX and accessories free and clear of liens. That Order is final. Therefore the Court finds the transaction was a sale, not simply a return of encumbered collateral or in-kind transfer. Under *St. Angelo, supra,* the proceeds of such sale of estate property are assessable with U.S. Trustee fees under § 1930(a)(6) notwithstanding the direct payment of the proceeds from Kaman to Textron.

DIP argues that it could have surrendered the collateral to Textron and Textron could have sold it to Kaman free of any U.S. Trustee fees, or could have waited until after dismissal to transfer the K–MAX, also avoiding U.S. Trustee fees. Thus, DIP contends, U.S. Trustee fees should not be assessed upon this transaction. DIP analogizes its

"legitimate financial planning", by structuring the transaction with Kaman and Textron to avoid U.S. Trustee fees, with taxpayers using lawful deductions to avoid taxes. Unfortunately for the DIP, the fee under § 1930(a)(6) is mandatory and not subject to either the Court's discretion or the equivalent of tax loopholes. *Hays Builders*, 144 B.R. at 779–80. The DIP, Kaman and Textron structured their agreement as they chose, in order to take advantage of the provisions of § 363(f). They must live with the consequences, including U.S. Trustee fees [1].

 DIP contends that the Court should apply case law construing 11 U.S.C. § 326 and the award thereunder of trustee fees in Chapter 7, 11, and 12 cases. DIP argues that since trustee fees are not awarded to trustees under that section for surrendered collateral, U.S. Trustee's fees should not be assessable under § 1930(a)(6). However, as observed by the court in *Hays Builders*, 144 B.R. at 779–80, the U.S. Trustee's fee under § 1930(a)(6), as opposed to § 326, is fixed and not subject to the court's discretion.

Trustees under chapter 7, 11 and 12 have different purposes and duties than U.S. Trustees. Chapter 7 trustees personally direct whether money comes into and out of the estate account, and their compensation is calculated under § 326(a) according to moneys disbursed by the trustee to creditors. *Hays Builders*, 144 B.R. at 779. A Chapter 11 trustee, if appointed, has similar duties and powers pursuant to 11 U.S.C. § 1106, and is also compensated under § 326(a).

A Chapter 12 trustee's duties are set forth at 11 U.S.C. § 1202. The Chapter 12 Trustee's maximum compensation is fixed by § 326(b) at five percent of all payments under a plan. DIP wishes the Court to apply *In re Schneekloth*, 14 Mont.B.R. 495, 186 B.R. 713 (Bankr.D.Mont.1995), a Chapter 12 case, to the instant Chapter 11. The Court held in *Schneekloth* that proceeds from the prepetition sale of collateral were not future earnings of the debtors and therefore not subject to the Chapter 12 Trustee's fee. 11 Mont.B.R. at 499, 186 B.R. at 716. The instant case is neither a Chapter 12, nor a case involving prepetition sale of collateral, nor a case involving calculation of a trustee's fee under § 326(b).

Section 326 awards reasonable compensation to Chapter 7 and 11 trustees based upon "moneys disbursed", and awards reasonable compensation to a Chapter 12 trustee on the basis of payments under a plan. Section 1930(a)(6) fixes the U.S. Trustee's fees based upon disbursements. They are different statutes utilizing different terms for different purposes, and thus the Court deems *Schneekloth* and the other cases construing § 326 inapposite in light of the controlling authority of *St. Angelo*.

IT IS ORDERED the U.S. Trustee's objection is sustained; the DIP's motion to dismiss, filed October 2, 1998, is granted on the condition the DIP pays all quarterly U.S. Trustee fees owed under § 1930(a)(6), calculated including the $3,284,117.29 settlement proceeds.

---

1. This result, approximately $8,000.00, is not draconian when compared with the $100,000 estimated administrative fees and costs the DIP estimated it would incur in a Chapter 11 confirmation in its motion for approval of settlement agreement, or the substantial fees and costs Kaman would incur in the course of foreclosing on the K–MAX under applicable non-bankruptcy law, as well as the fees and costs the parties would incur absent the settlement in litigating the DIP's scheduled claims against Kaman.