RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re: CYBERCO HOLDINGS, INC. and
TELESERVICES GROUP, INC.,

                            *Debtors*.

_____

HUNTINGTON NATIONAL BANK,

                          *Appellant*,

         *v.*

THOMAS RICHARDSON, Trustee for Chapter 7
Estate of Cyberco Holdings, Inc., MARCIA R.
MEOLI, Trustee for Chapter 7 Estate of
Teleservices Group, Inc., ePLUS GROUP, INC.,
and EL CAMINO RESOURCES LIMITED, INC.,

                          *Appellees*.

No. 10-2537

Appeal from the Bankruptcy Appellate Panel of the Sixth Circuit.
Nos. 1:04-BK-14905; 1:04-BK-14905.

Decided and Filed: August 20, 2013

Before: COOK and STRANCH, Circuit Judges; LAWSON District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Jeffrey O. Birkhold, James Moskal, Matthew T. Nelson, WARNER NORCROSS & JUDD LLP, Grand Rapids, Michigan for Appellant. Douglas A. Donnell, MIKA MEYERS BECKETT & JONES PLC, Grand Rapids, Michigan, for Appellees.

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

—————————————

OPINION

—————————————

DAVID M. LAWSON, District Judge.   Two questions are presented in this appeal from the Bankruptcy Appellate Panel's order dismissing Huntington Bank's appeal from the denial of its motions for substantive consolidation of two separate Chapter 7 petitions involving related entities; both questions require us to determine our appellate jurisdiction.  The first is whether the order of the Bankruptcy Appellate Panel (BAP) dismissing Huntington Bank's notice of appeal and denying its motion for permission to appeal is a final, appealable order.  We conclude that it is.  The second question is whether the BAP properly determined that the bankruptcy court's orders denying the motions for substantive consolidation are *not* final orders from which there would be a right to appeal.  We hold that the bankruptcy court's orders denying Huntington Bank's motions to substantively consolidate two Chapter 7 bankruptcy estates in this case are not final orders from which an appeal by right could be taken. Therefore, we affirm the BAP's order dismissing the appeal.

I.

The case stems from a fraudulent scheme perpetrated by the late Barton Watson and others  in the late 1990s and 2000s through two of his companies, Cyberco Holdings, Inc. and Teleservices Group, Inc.  The fraud victims were various lending institutions, which were bilked out of millions of dollars.  Huntington Bank includes itself among the victims, although it also has been accused of complicity in the fraud as Cyberco's banker.  Although Cyberco had started as a legitimate business in the early 1990s, by 2002 it had very few real customers and resorted to Watson's fraudulent scheme for its revenue.

As the bankruptcy court described it, Watson's scheme preyed on banks, leasing companies, and other similar financial institutions to provide funding for Cyberco to purchase computer equipment that it needed to expand its global business.  The

equipment was to be sold to Cyberco by Teleservices, a company also formed by Watson unbeknownst to the financing institutions.  Cyberco never received any of the computer equipment, but the lending institutions forwarded the funds to Teleservices based on phony invoices Watson arranged to document the bogus transactions.  Watson also "packed [Cyberco's] computer room with fake servers and he then swapped serial numbers among those servers in order to deceive the victims whenever they attempted an audit of their collateral." *In re Cyberco Holdings, Inc.*, 431 B.R. 404, 409 (Bankr. W.D. Mich. 2010).  Teleservices "funneled" the funds back to Cyberco, which used them to make note and lease payments to allow the fraud to continue, and to pay Watson and "his fellow cheats" substantial salaries.  *Ibid.*  Those payments were made through accounts at Huntington Bank, which also facilitated payments through its cash management services.

In 2002, Huntington Bank agreed to become Cyberco's bank.  Over time, it extended a $13 million line of credit, financed various equipment purchases, and issued at least one letter of credit.  By early 2004, Huntington Bank's exposure to Cyberco was in excess of $16 million.  Huntington Bank asked Cyberco to find a new bank in January 2004, and six months later, Cyberco began to pay down its debt to Huntington Bank.  Cyberco's loan payments to Huntington Bank were funded "by generating even more funds through the Teleservices scam.  Indeed, it was Teleservices that made most of the paydown even though Teleservices itself had no banking relationship with Huntington.  All told, Huntington was able to reduce its exposure from $12,600,000 in June 2004 to only about $600,000 just weeks before the FBI raided Cyberco in November of that same year." *Id.* at 410.

In December 2004, creditors of Cyberco commenced an involuntary Chapter 7 proceeding against Cyberco.  Roughly two weeks earlier, the Kent County, Michigan circuit court had appointed a receiver for Cyberco.  The receiver did not oppose the Cyberco bankruptcy petition.  As a result, an order for relief was entered the next day. Thomas Richardson was appointed trustee of the Cyberco bankruptcy estate.  The state-appointed receiver filed a voluntary Chapter 7 bankruptcy petition on behalf of

Teleservices Group, Inc. on January 20, 2005. Richardson was appointed trustee of that bankruptcy estate as well.

Richardson served as trustee of both the Cyberco and Teleservices estates until August 2007, when the United States Trustee replaced him with Marcia Meoli as the Teleservices trustee. Richardson continues to serve as the Cyberco trustee.

Huntington Bank filed claims against the Cyberco estate in February and March 2005. On December 8, 2006, Richardson commenced an adversary proceeding against Huntington Bank on behalf of the Cyberco bankruptcy estate, and followed on January 19, 2007 with one on behalf of the Teleservices bankruptcy estate. Both trustees have vigorously pursued the avoidance actions against Huntington Bank. The Cyberco trustee alleged that Huntington Bank received preferential transfers in connection with Cyberco's indebtedness, and the Teleservices trustee contended that Huntington Bank received fraudulent transfers from Teleservices, and also received greater amounts as a subsequent transferee of other fraudulent transfers made by Teleservices to Cyberco.

In January 2008, the bankruptcy court dismissed all but the preference claims brought by the Cyberco trustee against Huntington Bank. Then in December 2008, as part of its response to the avoidance actions, Huntington Bank filed a motion in both bankruptcy cases to substantively consolidate the "assets, liabilities and Chapter 7 bankruptcy estate of Teleservices Group, Inc. . . . with and into the Chapter 7 bankruptcy estate of affiliated debtor Cyberco Holdings, Inc." pursuant to 11 U.S.C. § 105(a). Appellant's App. at 416. Huntington Bank believed that substantively consolidating the cases would result in a reduction of what the two trustees claimed must be returned to the estates. The consolidation would have erased millions of dollars of intercompany debts, and it would have subjected the separate creditors of both companies to a single pool of assets for satisfaction of claims. Both bankruptcy trustees and two creditors in the Teleservices bankruptcy opposed Huntington's motions.

The bankruptcy court treated the substantive consolidation motions as contested matters and procedurally consolidated them with the discovery in the two adversary proceedings under Federal Rule of Bankruptcy Procedure 7042. The bankruptcy court

reasoned that information about Huntington Bank's allegations that Teleservices was Cyberco's *alter ego* related to Huntington Bank's other defenses in the adversary proceedings. The court's April 28, 2009 pre-hearing order noted that the proceedings "appeared at that time to share a common issue — to wit, whether Huntington's own dealings with Cyberco and Teleservices negated both its good faith defenses to the fraudulent transfer action and its ability to seek substantive consolidation under the two motions." *In re Cyberco*, 431 B.R. at 407 n.7. Before trial on the adversary proceedings and Huntington Bank's motions, Huntington Bank moved to exclude evidence and argument regarding its pre-petition conduct on the ground that it was of no consequence to the motions for substantive consolidation. The bankruptcy court agreed, finding that "unclean hands" was not a defense to Huntington Bank's motion to substantively consolidate.

The bankruptcy court held a twelve-day trial and reviewed post-hearing briefs before denying Huntington's two motions for substantive consolidation. In its lengthy opinion filed on July 2, 2010, the bankruptcy court recited its view of the history of substantive consolidation, rejecting the idea that 11 U.S.C. § 105(a) and broader concepts of equity provided bankruptcy courts the authority to substantively consolidate a bankruptcy estate with other debtors or non-debtor entities. Instead, the court viewed substantive consolidation as nothing more than turnover proceedings in which a bankruptcy trustee or debtor-in-possession seeks to bring property of another within the estate for distribution to creditors. The court determined that the remedies prescribed in Chapter 5 of the Bankruptcy Code, especially section 542, furnished the statutory authority for such actions. Alternatively, trustees and debtors-in-possession may agree to combine assets and liabilities of respective estates, subject to the objections of creditors under Bankruptcy Code section 363(b) or Bankruptcy Rule 9019(a). The court then denied Huntington Bank's motions for substantive consolidation because Huntington Bank did not have standing to seek relief, since the exclusive authority to bring turnover actions under section 542 belongs to the trustee. The court reasoned that Huntington Bank's recourse was to "react" to the trustees' proposals to combine the assets of the two estates.

Huntington Bank filed a notice of appeal under 28 U.S.C. § 158 from the July 2, 2010 orders denying its motions to substantively consolidate the Cyberco and Teleservices bankruptcy estates.  Alternatively, Huntington Bank requested that its notice of appeal be considered a motion for leave to appeal.  The Teleservices trustee moved for leave to file a cross-appeal if the BAP allowed Huntington Bank to proceed with its appeal.  The BAP ruled that the bankruptcy court's orders denying substantive consolidation would not be final until the bankruptcy court decided "common issues shared by the motions to consolidate and Teleservices' adversary proceeding."  BAP Order at 2.  The BAP reasoned that an order *granting* substantive consolidation could be considered a final, appealable order, but there was no authority supporting the idea that a *denial* of such a motion could be a final order.  The BAP also denied Huntington Bank's motion for leave to file an interlocutory appeal from the orders.

On November 24, 2010, Huntington Bank filed a notice of appeal of the BAP's order dismissing its appeal.

On March 17, 2011, the bankruptcy court issued an opinion that  addressed "the issues raised at trial concerning the Teleservices adversary proceeding," but refused to enter an order "because there remain[ed] a few unresolved matters that must be addressed." *Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.)*, 444 B.R. 767, 772 n.3, 844 (Bankr. W.D. Mich. 2011).

II.

The court of appeals has appellate jurisdiction over "all final decisions, judgments, orders, and decrees" entered by a Bankruptcy Appellate Panel.  28 U.S.C. § 158(d)(1).  The Cyberco trustee argues that the BAP's order dismissing the Huntington Bank's notice of appeal is not a final order, and therefore we have no jurisdiction to reach the underlying question whether the bankruptcy court's orders denying the substantive consolidation motions are appealable. We disagree.

Our cases have made clear that an order by a BAP (or a district court exercising appellate jurisdiction over a bankruptcy court) remanding a case for anything more than

ministerial proceedings by the bankruptcy court is not a final, appealable order. *Settembre v. Fidel. & Guar. Life Ins. Co.*, 552 F.3d 438, 441 (6th Cir. 2009) (reviewing cases and "hold[ing] expressly that 'a decision by the district court on appeal remanding the bankruptcy court's decision for further proceedings in the bankruptcy court is not final, and so is not appealable to this court, unless the further proceedings contemplated are of a purely ministerial character'" (quoting *In re Lopez*, 116 F.3d 1191, 1192 (7th Cir. 1997))). The trustee argues that the BAP's order dismissing Huntington Bank's appeal from the denial of the substantive consolidation motions remanded the case to the bankruptcy court for further proceedings, and therefore it cannot be considered final. However, there is no language in the BAP's order that mentions remand. So the trustee resorts to the notion that the BAP's order served as a *de facto* remand because it relied on the fact that "common issues shared by the motions to consolidate and Teleservices' adversary proceeding" were not decided. BAP Order at 2. We do not see it that way.

The BAP's decision to dismiss Huntington Bank's appeal was based on its finding that the bankruptcy court's orders denying the substantive consolidation motions were interlocutory, nothing more. It fully resolved the appellate proceedings by deciding the jurisdictional question and left nothing for the bankruptcy court to do. *Schwartz v. Kujawa (In re Kujawa)*, 323 F.3d 628, 629 (8th Cir. 2003) (explaining that BAP's order dismissing an appeal on the ground that the underlying bankruptcy court's order was not a final order was final and appealable because "[i]t completely disposed of all matters pending before the Panel"). We have jurisdiction under 28 U.S.C. § 158(d)(1) to address the correctness of that decision.

### III.

The question whether the bankruptcy court's orders denying the substantive consolidation are appealable requires consideration of the same concept: finality. The BAP's jurisdiction is the same as the district court's appellate jurisdiction over bankruptcy matters, extending to "final judgments, orders, and decrees" of the bankruptcy court, and certain interlocutory orders. 28 U.S.C. § 158(a). We have held that the "finality requirement is considered 'in a more pragmatic and less technical way

in bankruptcy cases than in other situations.'" *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996) (quoting *Cottrell v. Schilling (In re Cottrell)*, 876 F.2d 540, 541-42 (6th Cir. 1989)); *see also Millers Cove Energy Co., Inc. v. Moore (In re Millers Cove Energy Co., Inc.)*, 128 F.3d 449, 451 (6th Cir. 1997) ("The authors of one treatise note . . . that '[v]irtually all decisions agree that the concept of finality applied to appeals in bankruptcy is broader and more flexible than the concept applied in ordinary civil litigation.'" (quoting 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3926.2 (2d ed. 1996) (alteration in original))).

One reason for this relaxed approach is that finality concepts that easily apply to lawsuits typically brought in the district courts do not readily translate into the more far reaching proceedings that characterize bankruptcy cases. The latter have been described as "sprawling events that are made up of smaller, discrete proceedings." *In re McKinney*, 610 F.3d 399, 402 (7th Cir. 2010). Those discrete proceedings can have a beginning, middle, and end much detached from the larger bankruptcy case itself, and result in the final determination of rights and responsibilities of parties beyond the debtor and certain other creditors. We have recognized, therefore, that "where an order in a bankruptcy case 'finally dispose[s] of discrete disputes within the larger case,' it may be appealed immediately." *In re Dow Corning Corp.*, 86 F.3d at 488 (quoting *In re Saco Local Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983)).

Huntington Bank argues that its substantive consolidation motions fall within the "discrete proceeding" rubric and therefore the lengthy hearing that culminated in their denials was a final decision that it should be able to appeal immediately. It urges us to adopt the approach taken by the First Circuit in *In re Saco Local Development Corp.*, that views a "'proceeding' within a bankruptcy case as the relevant 'judicial unit' for purposes of finality." 711 F.2d at 445. It argues that contested matters, adversary proceedings, and plenary suits are the judicial units from which appeals should be taken. The Bank then reasons that the bankruptcy court's orders denying the motions for substantive consolidation concluded that contested matter and therefore should be

considered final.  *See EFL Ltd. v. Miramar Res., Inc. (In re Tascosa Petroleum Corp.)*, 196 B.R. 856, 864 (D. Kan. 1996) ("Contested matters are also considered a 'separate judicial unit' for purposes of determining finality." (citing I Collier on Bankruptcy ¶ 3.03 at 3-192 (15th ed. 1995))).

In support of its position, Huntington Bank cites cases from other circuits that have entertained appeals from orders *granting* motions for substantive consolidation as final, appealable orders.  *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005); *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 761-62 (9th Cir. 2000); *Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 516-17 (2d Cir. 1988).  In each of those cases, the courts concluded that the effect of substantive consolidation on creditors and other interested parties was so substantial and likely irreversible that immediate review was appropriate, although the court in *In re Augie/Restivo Baking Co.* did not address the question specifically.

To fully appreciate the rationale behind those rulings, a brief discussion of the concept of substantive consolidation is useful.  It has been described as a process that "'treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased). The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor.'"  *In re Owens Corning*, 419 F.3d at 205 (quoting *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 423 (3d Cir. 2005)). When two bankrupt entities are involved, "[s]ubstantive consolidation usually results in, *inter alia*, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans."  *In re Augie/Restivo Baking Co.*, 860 F.2d at 518.  Substantive consolidation can have a profound effect on the rights of creditors by requiring a creditor of one debtor to compete on a parity with the creditors of a less-solvent debtor, or otherwise adversely affecting substantive rights.  *See Eastgroup Props. v. S. Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991) ("Because the entities to be consolidated

are likely to have different debt-to-asset ratios, consolidation almost invariably redistributes wealth among the creditors of the various entities." (internal quotation marks omitted)); *Flora Mir Candy Corp. v. R. S. Dickson & Co. (In re Flora Mir Candy Corp.)*, 432 F.2d 1060, 1062 (2d Cir. 1970) ("While the term has a disarmingly innocent sound, consolidation in bankruptcy, in the form directed in this case, is no mere instrument of procedural convenience, such as consolidation of actions under F. R. Civ. P. 42(a), but a measure vitally affecting substantive rights.").

Substantive consolidation is not a procedure or right recognized by the Bankruptcy Code or Rules, *see* Bankr. R. 1015 advisory committee's note ("Consolidation, as distinguished from joint administration, is neither authorized nor prohibited by . . . rule [1015] since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates."), although the prevailing view is that it "has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898," *In re Bonham*, 229 F.3d at 763 (citing *In re Reider*, 31 F.3d 1102, 1105 (11th Cir. 1994); *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941)). At present, courts have found that the power of substantive consolidation derives from the broad language of 11 U.S.C. § 105(a), which states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Our cases have not discussed the concept at length or prescribed factors to consider when it is to be applied, but we have recognized the procedure without criticism. *See First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 720-21 (6th Cir. 1992); *see also Creditors Servs. Corp. v. Cooley (In re Creditors Servs. Corp.)*, 182 F.3d 916, 1999 WL 519296, at *2 (6th Cir. 1999) (Table) (noting that "[s]ubstantial consolidation is a recognized equitable power of bankruptcy courts granted in 11 U.S.C. § 105(a)").

Courts that have held that orders *granting* substantive consolidation are final and appealable differ somewhat on their rationale, but they have adopted a "pragmatic approach" because of the unique features of bankruptcy proceedings. *In re Owens*

*Corning*, 419 F.3d at 203; *In re Bonham*, 229 F.3d at 761. In *Bonham*, the Ninth Circuit acknowledged that certain bankruptcy proceedings were "so distinctive and conclusive" that an immediate appeal should be allowed. 229 F.3d at 761. The court's "approach 'emphasize[d] the need for immediate review, rather than whether the order is technically interlocutory.'" *Ibid.* (quoting *Allen v. Old Nat'l Bank of Wash. (In re Allen)*, 896 F.2d 416, 418 (9th Cir. 1990)). Applying that rationale, the court held that a substantive consolidation order should be reviewed immediately because it "seriously affects the substantive rights of the involved parties," "almost invariably redistributes wealth among the creditors of the various entities," and could result in "irreparable harm if the losing party must wait until the bankruptcy court proceedings terminate before appealing." *Id.* at 762 (citations and internal quotation marks omitted).

The Third Circuit in *In re Owens Corning* based its "relaxed standard" of finality in bankruptcy cases in part on its desire to conserve judicial resources. 419 F.3d at 203 ("Particularly relevant to our case is that '[t]o delay resolution of discrete claims until after final approval of a reorganization plan . . . would waste time and resources, particularly if the appeal resulted in reversal of a bankruptcy court order necessitating re-appraisal of the entire plan.'" (quoting *Clark v. First State Bank (In re White Beauty View, Inc.)*, 841 F.2d 524, 526 (3d Cir. 1988))). The court also stressed that "issues central to the progress of the bankruptcy petition, those 'likely to affect the distribution of the debtor's assets, or the relationship among the creditors,' should be resolved quickly." *Ibid.* (quoting *Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 98 (3d Cir. 1988)). Ultimately, the court considered the following four factors in determining its jurisdiction: "(1) [t]he impact on the assets of the bankrupt estate; (2) [the][n]ecessity for further fact-finding on remand; (3) [t]he preclusive effect of [its] decision on the merits of further litigation; and (4) [t]he interest of judicial economy." *Ibid.* (internal quotation marks omitted). Applying those factors, the court held that a substantive consolidation order should be considered final and appealable because it would have a "profound effect on the assets of the consolidated entities," the factual record was fully developed at the lengthy motion hearing, the order would have preclusive effect on "the merits of further litigation," and judicial economy favored immediate review, since "[a]

later reversal of such an order risks rendering meaningless any proceedings premised on the viability of a plan that calls for a consolidation." *Id.* at 204.

Those factors may be useful determinants of the meaning of "finality" in the bankruptcy context. We believe, however, that there are significant differences between the finality of an order that grants substantive consolidation and one that denies it. The impact of an order denying substantive consolidation is relatively minor, and the upshot of it is that the parties will proceed to the administration of the separate bankruptcy estates according to traditional rules. Huntington Bank's circumstance is a case in point. The Bank interposed the substantive consolidation motions as a defense to the turnover proceedings brought by the each of the trustees. The Bank saw an advantage in reduced exposure if its motions were granted. Now that the motions have been denied, the trustees may proceed with their respective adversary proceedings, and if the Bank does not prevail, it still may raise as error on appeal the denial of the substantive consolidation motions, having lost nothing in the process. Of course, if the Bank were to prevail on appeal, it would have incurred additional litigation expense; but that is no different than with any litigant who loses at trial successfully raising on appeal the erroneous denial of, say, a summary judgment motion seeking determination of one of its defenses. We find that analogy more directly applicable here.

It is not unreasonable to view the contested substantive consolidation motions as a "judicial unit" in the finality analysis. But that judicial unit also must be considered in the broader context of the adversary proceedings that spawned those motions. And although granting the motions would have profoundly affected the administration of the bankruptcy estate, very few, if any, of those consequences come to pass from the denial of the motions.

We hold, therefore, that the bankruptcy court's orders denying the motions to substantively consolidate the bankruptcy estates of Cyberco Holdings and Teleservices Group are not final orders within the meaning of 28 U.S.C. § 158(a)(1). Of course, nothing prevents the BAP from granting permission to appeal under section 158(a)(3) after considering the relevant factors. The BAP declined to grant such permission in this

case, but Huntington Bank has not challenged that ruling in this appeal. And the BAP's refusal to allow the discretionary appeal took into account the state of the bankruptcy court proceeding at the time, which no doubt has changed. The bankruptcy court and the BAP (and the district court) have considerable flexibility to allow an appeal on a discretionary basis. *See Lindsey v. Pinnacle Nat. Bank (In re Lindsey)*, ___F.3d___, ___, No. 12-6362, slip op. at 5-6 (6th Cir. Aug. 13, 2013). We believe that the decision to permit an appeal of an order denying substantive consolidation ought to be made as a discretionary matter under section 158(a)(3).

## IV.

Huntington Bank had no right to appeal the orders of the bankruptcy court denying its motions for substantive consolidation. The order of the Bankruptcy Appellate Panel dismissing the appeal, therefore, is **AFFIRMED**.